# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

OSCAR DIAZ (DOB: xx/xx/1980),

    Defendant.

**CRIMINAL COMPLAINT**

CASE NUMBER: 09-75m (AEG)

    I, Doreen DuCharme, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief in the State and Eastern District of Wisconsin, and elsewhere, **OSCAR DIAZ,** the defendant herein engaged in the following conduct:

    On or about November 30, 2009, knowingly possessed child pornography, as defined in Title 18, United States Code, Section 2256(8)(A), that had been transported in interstate and foreign commerce, including by computer and that was produced using material which had been transported in interstate commerce, in violation of Title 18, United States Code, Section 2252(a)(4)(B).

    I further state that I am a Detective with the Milwaukee Police Department, and that this complaint is based on the following facts: Please see the attached affidavit of Detective DuCharme, which is continued on the attached sheet and made a part hereof: _X_ Yes ___ No

_Det. Doreen DuCharme_
Signature of Complainant
Doreen DuCharme
Detective, Milwaukee Police Department

Sworn to before me and subscribed in my presence,

12/4/09
Date

at Milwaukee, Wisconsin
City and State

The Honorable Aaron E. Goodstein
United States Magistrate Judge
**Name & Title of Judicial Officer**

_Hann Goodstein_
Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Doreen DuCharme, being duly sworn on oath, state as follows:

Purpose of this Affidavit

      I make this affidavit in support of a criminal complaint charging Oscar Diaz, date of birth xx-xx-80, with Title 18 United States Code, Section 2252(a)(4)(B) (possession of Child Pornography).

Background and Experience of Affiant

1.      I am a Detective with the Milwaukee Police Department (MPD) and have been employed by MPD for 17 years, 10 years as a Detective. Since its inception in 2004, I have been assigned to the Criminal Investigation Bureau's High Technology Unit. As part of my duties with the High Technology Unit, I investigate violations of state and federal criminal laws involving child exploitation and child pornography, which includes violations of 18 U.S.C. 2252(a)(4)(B) possession of child pornography.

2.      I have received specialized instruction in the area of child pornography and child exploitation investigations. I received training in this area from the Internet Crimes Against Children Task Force, in a course entitled Undercover Chat Investigations and Child Pornography Investigations and at the Internet Crimes Against Children Conference in Appleton, WI in 2005. I have also received training in other areas pertaining to cyber crimes and computer forensics.

Basis for Facts Establishing Probable Cause

3.      The information contained in this affidavit is based upon my personal knowledge and investigation, my review of various documents and records, as well as information supplied to me by other detectives and law enforcement officers, all of whom I believe to be truthful and reliable. Everything set forth in this affidavit is true to the best of my knowledge and belief.

4.      The information contained in this affidavit is not an exhaustive account of everything I know about this case. Rather, it contains only the facts that I believe are necessary to establish probable cause to believe that Oscar DIAZ committed the violation alleged in the criminal complaint. Everything set forth in this affidavit is true to the best of my knowledge and belief.

Facts Establishing Probable Cause

5.      This offense occurred in the Eastern District of Wisconsin. In my capacity as a Task Force Officer assigned to the FBI Cyber Crimes Task Force, in November 2008, I was assigned follow-up in a peer-to peer case. In that case, an Agent of the Federal Bureau of Investigation accessed the Gnutella Network, using Limewire, on June 13, 2008 from 12:56 to 13:04 ET. During that time, the Special Agent downloaded four image files and one video from a Gnutella

based user who was assigned to the Internet Protocol address 76.229.232.210. The Special Agent reviewed the downloaded images and video and determined that most were Child Pornography.

6. A Subpoena sent to AT&T revealed that the subscriber of the IP address 76.229.232.210 on the date and time that the files were downloaded was Pascual DIAZ, W/M, XX/XX/50, of 1504 S. 38th St., Milwaukee, WI.

7. On Sunday, November 29, 2009, Detective Richard McQuown and I went to 1504 S. 38th St. at approximately 2:45pm. I knocked on the door, which was answered by a Hispanic female. I identified both Detective McQuown and myself, but the woman stated she did not speak English, and asked another occupant of the residence to come to the door. At that point, a man, who was later identified as Pascual DIAZ, came to the door.

8. I identified Detective McQuown and myself to Pascual DIAZ, and told him that we were investigating an incident involving a computer. I asked to speak with him inside the residence, and he invited us in. At that point I told him that we were investigating an incident involving Internet use and a computer at his residence. He told me that the Internet was in his name, but that the only computer in the house belonged to his sons.

9. I asked Pascual DIAZ if we could speak with his sons, and he informed me that only one was home at the time. He called that son downstairs. Detective McQuown and I then met with that subject, who identified himself as Oscar DIAZ. I explained to Oscar DIAZ that we were involved in an Internet investigation, and asked if he used a computer inside the residence. He stated he did, and I asked if we could speak with him privately, and suggested that we would like to speak with him in the room where the computer was, if possible.

10. Oscar DIAZ then asked us to follow him as we walked upstairs, to a bedroom located on the northwest corner of the house. I could see a desktop computer attached to a monitor near the window, and the monitor was on displaying a screen having an airplane.

11. I told Oscar DIAZ that he was not in custody, and he did not have to speak with us, but I thanked him for talking to us. I asked Oscar DIAZ to provide me with his date of birth, and he produced an ID having his name, photo, and date of birth. I recorded that information as follows: Oscar DIAZ, W/M, XX/XX/80, D200-6408-0066-06.

12. I told Oscar DIAZ that our investigation involved Limewire and inappropriate images that were downloaded through Limewire. I asked Oscar DIAZ if he knew what I meant by "inappropriate" images, and he replied "pornography". I told him that I meant child pornography, (nude images of children in sexual poses), and asked if he had ever downloaded that or seen that on his computer. He stated that he used Limewire to download music, but that he had never seen child pornography on his computer.

2

I asked Oscar DIAZ if anyone else used his computer, and he told me that his brother, Hilario DIAZ, also used the computer, and that Hilario's friends also used it.

Oscar DIAZ stated that his brother used the computer mostly to look at "sports" sites, and he did not know what Hilario's friends did on the computer.

I asked Oscar DIAZ for consent to search his computer, and told him that he could tell me he did not want to give consent. I explained that we could look at the computer at his residence, but it would be easier in the lab at the Milwaukee Police Department. DIAZ immediately told me that he would give us permission to take the computer from his residence to do the forensic exam.

13. I realized that I did not bring the correct consent form into the residence, and at that point Detective McQuown left the residence to retrieve a consent form from our vehicle. During the time that Detective McQuown was gone, I spoke very briefly to Oscar DIAZ and told him that he should not download files from Limewire as they often contained viruses. He answered that he had many viruses on his computer in the past. I asked him if he had an Ipod, and he stated he did. I told him that it was best to purchase his music through I-Tunes, and he stated that he did use I-Tunes now.

14. Detective McQuown returned to the residence with the consent form, and in the presence of Oscar DIAZ, I read the consent form to him, but checked out the items we did not ask his permission for. I marked on the form the only item that pertained to him at the time, which was the computer. I asked him if he had any external hard drives or thumb drives and he stated he did not. Oscar DIAZ verbally gave his consent to remove his computer from the residence, and gave consent in written form on the consent form by signing and dating the form.

15. Detective McQuown unhooked the computer from the monitor and from the power supply, and we left the residence. Prior to leaving the residence, I obtained Oscar DIAZ's cell phone number from him and told him that I would call him on Monday, (November 30, 2009), after I had an opportunity to look at the computer. I wrote my name and number on a post-it-note for Oscar DIAZ and told him to call me if he had questions or concerns.

16. Detective McQuown conveyed the computer, a Dell Dimension E520 desktop pc, service tag # HP1M8C1, containing a Samsung 160GB HD, serial number S0DFJ1NLB17884 to the Milwaukee Police Department High Technology Unit, where I placed it on Inventory #498573.

17. Detective McQuown removed the hard drive from the computer, and using a write-blocked exam station and EnCase software, conducted a preview of the computer and observed numerous files containing child pornography.

18.     Prior to us leaving the residence, Detective McQuown observed two non-commercial manufactured optical media discs on the computer desk where the computer was recovered at 1504 South 38th Street.

19.     Based upon the discovery of the images and videos of child pornography stored on the computer, on Monday, November 30, 2009, I applied for, and was granted a state Search Warrant for the residence at 1504 S. 38th St., and also to continue the forensic exam of the hard drive obtained from DIAZ's computer the day before.

20.     On Tuesday, December 1, 2009, at 9:49am, members of the Milwaukee Police Department High Technology Unit/Cyber Crimes Task Force went to the residence at 1504 S. 38th St. along with members of the Federal Bureau of Investigation, Milwaukee Office/Cyber Crimes Task Force, to execute the search warrant.

21.     At 9:49am on Tuesday, December 1, 2009, I knocked on the front door. At 9:52am the door was answered by a subject later identified as Hilario nmn DIAZ, w/m, XX/XX/85, of 1504 S. 38th St. For officer safety during the initial search warrant execution, I placed Hilario DIAZ in handcuffs, and seated him on the couch in the family room. After the residence was cleared, at 9:57am, I read the search warrant to Hilario DIAZ. Prior to reading it, I questioned him as to his proficiency in English, and he stated that he was very fluent in English and was comfortable with me reading the warrant to him in English. During the reading of the warrant, Pascual DIAZ came to the front door and entered the residence. I briefly stopped the reading of the warrant to advise Pascual DIAZ of the reason for us being in his residence, and after he assured me that he would understand in English, I continued reading the warrant.

22.     Just after I finished reading the warrant, Oscar DIAZ arrived at the residence via the back door. Neither Pascual DIAZ nor Oscar DIAZ was placed in handcuffs at the scene because the residence had already been cleared.

23.     My first interview began with Hilario DIAZ, and took place in Oscar DIAZ's bedroom on the first floor of the residence. I unhandcuffed him, but because he was not free to leave the Search Warrant scene, I Mirandized him and interviewed him as to his knowledge of child pornography on the computer. Hilario DIAZ denied downloading child pornography on the computer, and stated that both he and his brother, Oscar, used the computer. He added that his niece and nephew on rare occasions also used the computer. Hilario DIAZ stated that on one occasion, while saving a "devil" picture to his computer, he observed images of pornography inside a folder, (as the thumbnails rendered), but stated that he was not the one to put those images in the folder and assumed it was his brother, Oscar. Hilario DIAZ stated that the computer had been inside his bedroom on the second floor prior to us removing it from the residence the day before.

24.     Next I interviewed Oscar DIAZ inside his bedroom. Prior to me being able to read Oscar DIAZ his constitutional rights/Miranda warnings, Oscar DIAZ blurted out words to the effect of

4

he had planned on calling me to confess. During Oscar DIAZ's Mirandized statement at the scene, Oscar DIAZ admitted to downloading child pornography from Limewire since 2007, and further admitted that he had printed out many of the images and stored those printed out images in folders which he had hidden outside the residence in a crawl space under the porch. He also admitted that he had a pair of pink girls' underpants inside his dresser drawer. Oscar DIAZ stated that he had been viewing and collecting images of child pornography for three years, since they had purchased the computer in 2007. He stated that he had hundreds of pictures of child pornography and many videos. He denied taking any of the pictures himself, and denied ever touching any children inappropriately. At the conclusion of my interview of Oscar Diaz at the scene, I told SA Christopher Saviano of DIAZ' disclosure about the box hidden outside. SA Saviano and SA Pleming attempted to locate it within the crawl space, but did not immediately find it. Oscar DIAZ told me that it was hidden underneath some insulation, and after I conveyed that information to SA Saviano, he and SA Pleming found the box.

25. Additionally, Detective. McQuown found a binder containing printed off images of child pornography in the basement, and during my interview of Pascual DIAZ, he disclosed that he, too, had found a folder containing pornography. Pascual DIAZ pointed out the downstairs office desk drawer, and stated that on the Wednesday before Thanksgiving he had found a folder inside the couch, and had wanted to confront Oscar DIAZ about the pictures in the folder ever since. He stated that the images were "nasty". Upon my viewing of the images I observed 38 printed out pages of child pornography.

26. In addition to the printed material recovered in the desk drawer and in the binders, there were hundreds of "barely legal" type dvd's in the basement in garbage bags. There were also hundreds of pornographic magazines in the basement.

27. I arrested Oscar DIAZ for possession of child pornography, and he was conveyed to the Police Administration Building (PAB) for processing. While at the PAB, I conducted another Mirandized interrogation of Oscar DIAZ, who again admitted that he had downloaded images of child pornography from Limewire, printed those images to paper, and put those papers into binders. He stated that after we had left his residence on Sunday, November 29, 2009, he had taken the binders from his bedroom and put them under the back porch in the crawl space. As for the pink girls' underpants, Oscar DIAZ stated that he had taken them from the drawer of his father's brother's daughter, J.D., when Oscar DIAZ went to Kansas City, Kansas for a trip approximately 3 years earlier. He denied taking sexually suggestive pictures of J.D., or touching her inappropriately. He stated he had taken the underwear from J.D.'s drawer when he stayed in her room.

28. Of the many images of child pornography recovered at the residence at 1504 S. 38th St. were the following images and videos:

01.
MPD Inventory Number: 498678-1 (Basement\Binder\Paper)

5

Description: Paper with images printed containing suspect child pornography. One side of the paper has 24 color images, approximately 1 inch by 1 inch. At least ten images contain child pornography with female victims, approximately age range from 2-6 years, apparently being sexually assaulted in various ways including but not limited to penis to mouth, hand to penis and penis to vagina. The other side of the paper is a color image, approximately 7 inches by 11 inches, of a girl, approximately 6-8 years of age, with her legs spread exposing her genitalia.

02.
MPD Inventory Number: 498678-2 (Basement\Binder\Paper)
Description: Paper with image printed containing suspected child pornography. The image depicts two prepubescent females, age 9-11, seated nude on top of a bathtub. Each girl is squatting over the bathtub, with her legs spread, exposing her genitalia.

03.
MPD Inventory Number: 498678-3 (Crawl Space\Black Binder\Paper)
Description: Paper with image printed containing suspected child pornography. The image depicts a prepubescent female, age 9-11, seated wearing a blue and pink printed dress. The dress is pulled up exposing her nude genitalia.

04.
MPD Inventory Number: 498678-4 (Crawl Space\Dr. Pepper Binder\Paper)
Description: Paper with images printed out depicting several children, one of which is a prepubescent female, age 6-8, seated nude, with her knee raised so that her nude genitalia is the focus of the photo. The path of the photo indicates that it came from "darklolitapics.com".

05.
MPD Inventory Number: 498573-1 (Computer)
Name: Z-3yo girl blowjob & swallows pedo r@ygold hussyfan lolitaguy lsm pthc babyshivid(1).mpg
Last Accessed: 11/28/09 11:08:39AM
File Created: 06/21/09 11:44:42AM
Last Written: 06/21/09 12:26:10PM
Full Path: \\\Documents and Settings\All Users\Documents\video\Z-3yo girl blowjob & swallows pedo r@ygold hussyfan lolitaguy lsm pthc babyshivid(1).mpg
Description: Color video, 3 minutes and 25 seconds in length, depicting a prepubescent girl, approximately 2-3 years of age. The child is naked in a bathtub. The child is sexually assaulted by an adult male multiple times throughout the video including but not limited to: finger to vagina, hand to penis and mouth to penis.

06.
MPD Inventory Number: 498573-1 (Computer)
Name: zooskool-(Pthc) Hussyfan R@ygold babyshivid-Anya 11yo child prostitute.mpg
Last Accessed: 11/28/09 07:39:40PM

6

File Created: 05/19/09 09:03:40AM
Last Written: 05/19/09 08:23:08AM
Full Path: \\\Documents and Settings\All Users\Documents\video\zooskool-(Pthc) Hussyfan R@ygold babyshivid-Anya 11yo child prostitute.mpg
Description: Color video, 16 minutes and 41 seconds in length, depicting a prepubescent girl, approximately 7-9 years of age. The child is sexually assaulted by an adult male multiple times throughout the video including but not limited to: mouth to vagina, hand to penis, mouth to penis and penis to vagina. The adult male ejaculates into the child's mouth.

07.
MPD Inventory Number: 498573-1 (Computer)
Name: little 8yo preteen boy sucks 9yo friend as they both jack daddy - kdv rizmasta rizmastar pjk rbv pthc pedo kiddy r@ygold cp boys preteens.jpg
Last Accessed: 10/27/09 08:01:51PM
File Created: 07/10/09 06:24:50PM
Last Written: 07/10/09 06:26:01PM
Full Path: \\Documents and Settings\All Users\Documents\video\New Folder\little 8yo preteen boy sucks 9yo friend as they both jack daddy - kdv rizmasta rizmastar pjk rbv pthc pedo kiddy r@ygold cp boys preteens.jpg
Description: Color image depicting two prepubescent boys, approximately 6-8 years of age. One boy is naked from the waist up and wearing a pair of jeans. The second boy appears to be naked. The boy wearing the jeans appears to be engaged in penis to mouth sexual contact of the naked boy.

08.
MPD Inventory Number: 498573-1 (Computer)
Name: 9yo Jenny nude with legs spread wide apart showing pussy - underage lolita r@ygold pthc ptsc ddogprn pedo young child sex preteen hussyfan kiddie kiddy porn.jpg
Last Accessed: 10/03/09 06:47:25PM
File Created: 05/19/09 09:08:53AM
Last Written: 07/30/09 08:02:56PM
Full Path: \\Documents and Settings\All Users\Documents\video\New Folder\9yo Jenny nude with legs spread wide apart showing pussy - underage lolita r@ygold pthc ptsc ddogprn pedo young child sex preteen hussyfan kiddie kiddy porn.jpg
Description: Color image depicting a prepubescent girl, approximately 8-10 years of age. The child appears to lying on her back with her legs and arms being bound by yellow rope. The rope appears to be tying the child legs apart with the focus of the image being a lascivious display of the child's gentalia.

09.
MPD Inventory Number: 498573-1 (Computer)
Name: !!pthc lsm magazine 9yo kidzilla pre-teen young little girls harry potter jenny - Polin115 (1).jpg

7

Last Accessed: 11/17/09 07:57:19PM
File Created: 09/08/09 05:29:06PM
Last Written: 09/08/09 05:30:06PM
Full Path: \\Documents and Settings\All Users\Documents\video\pictures\!!pthc lsm magazine 9yo kidzilla pre-teen young little girls harry potter jenny - Polin115 (1).jpg
Description: Color image depicting two prepubescent girls, approximately 8- 10 years of age. Both children appear to be naked. One child is holding the other child's legs apart with the focus of the image being a lascivious display of the child's gentalia

10.
MPD Inventory Number: 498573-1 (Computer)
Name: !!!New!!! (Pthc) nina (7yo bj).mpg
Last Accessed: 11/28/09 07:34:28PM
File Created: 05/02/09 07:18:54PM
Last Written: 05/02/09 07:18:25PM
Full Path: \\Documents and Settings\All Users\Documents\video\!!!New!!! (Pthc) nina (7yo bj).mpg
Description: Color video, 13 minutes and 47 seconds in length, depicting a prepubescent girl, approximately 7-8 years of age. The child is sexually assaulted by an adult male multiple times throughout the video including but not limited to: hand to vagina, hand to penis and penis to mouth.

In addition to the images described above, the binders contained over 300 images of child pornography, including cartoon depictions, virtual child pornography, and sketched child pornography. The computer contained over 100 images of child pornography and numerous videos of child pornography.

29. As part of my training, I have become familiar with the Internet (also commonly known as the World Wide Web), which is a global network of computer and other electronic devices that communicate with each other using various means, including standard telephone lines, high-speed telecommunications lings (e.g., copper and fiber optic cable), and wireless transmissions including satellite. Due to the structure of the Internet, connections between computers on the Internet routinely cross state and international borders, even when the computers communicating with each other are in the same state. Individuals and entities use the Internet to gain access to a wide variety of information; to send information to, and receive information from, other individuals; to conduct commercial transactions; and to communicate via electronic mail ("e-mail"). An Individual access to the Internet is accomplished through a computer[1] that is linked to the Internet, usually through a commercial service which is called and

---

[1]Computer. The term "computer" is defined by 18 U.S.C. section 1030(e)(1) to mean "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operation in conjunction with such device, but such

8

"Internet Service Provider" or "ISP." Once the individual has accessed the Internet, whether from a residence, a university, or a place of business, that individual can use Internet mail services, including sending and receiving e-mail.

30. The hard drive for the Dell Computer was a Samsung Model HD160JJ/P, Serial number: S0DFJ1NLB17884, and was manufactured in Korea, thereby requiring it to be transported in foreign commerce before it arrive in Wisconsin.

Conclusion

31 Based on the above, I believe probable cause exists that Oscar DIAZ utilized his Dell Desktop computer with the Limewire file sharing program to obtain images and videos of child pornography, which he printed out to paper and stored in binders, in violation of Title 18 United States Code, Section 2252(a)(4)(B) (possession of child pornography).

---

term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device."